IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GABRIELLA TELLEZ § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| v. § | CIVIL ACTION NO. _____ | |
| § | | |
| HARRIS COUNTY TEXAS, § | | |
| C. ROGERS, INDIVIDUALLY, AND § | | |
| B.E. FOREMAN, INDIVIDUALLY § | JURY TRIAL | |
| § | | |
| **Defendants.** § | | |

**PLAINTIFF'S ORGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE U.S. DISTRICT JUDGE:

GABRIELLA TELLEZ (hereinafter "Gabriella"), Plaintiff, files this Original Complaint and Jury Demand against HARRIS COUNTY TEXAS (hereinafter "the County"), CHRISTOPHER ROGERS (hereinafter "Rogers") in his individual capacity, and B. E. FOREMAN (hereinafter "Foreman"), in his individual capacity, Defendants, and for cause of action alleges the following:

**THE PARTIES**

1. Plaintiff, GABRIELLA TELLEZ is a resident of Harris County, Texas.

2. Defendant HARRIS COUNTY TEXAS is political subdivision withing the State of Texas and may be served with process by serving the County Attorney, Christian D. Menefee, at 1019 Congress Street, Houston, Texas, 77002.

3. Defendant CHRISTOPHER ROGERS is a Harris County Sheriff's Office deputy who at all times relevant to this complaint was acting under color of law, and is sued in his individual

1

capacity, and may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002 or wherever he is found.

4. Defendant B. E. Foreman is a Harris County Sheriff's deputy who at all times relevant to this complaint was acting under color of law, and is sued in his individual capacity, and may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002 or wherever he is found.

## JURISDICTION AND VENUE

5. Gabriella Tellez brings this lawsuit under the Second and Fourth Amendments, as incorporated through the Fourteenth Amendment, to the U.S. Constitution, 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 2201.

6. This Court has jurisdiction under 28 U.S.C. § 1331 because Gabriella Tellez brings claims under the U.S. Constitution and federal laws. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) because Tellez seeks to redress the deprivation of federal constitutional rights under the color of state law or custom.

7. Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) as the events giving rise to Plaintiff's claim occurred in this district.

## INTRODUCTION

8. Gabriella Tellez files this complaint for violations of her rights protected by the Second and Fourth Amendments, as incorporated by the Fourteenth Amendment, to the Constitution of the United States of America.

9. December 10, 2022, Defendants violated Gabriella's rights protected by the Second and Fourth Amendments, as incorporated by the Fourteenth Amendment, of the Constitution of the United States of America. Defendants' detention, arrest, property seizure, charging decision, and

jailing of Gabriella, all without warrant or reasonable suspicion or probable cause violated her right to bear arms protected by the Second Amendment and her right to be free from unreasonable search and seizure protected by the Fourth Amendment, as incorporated by the Fourteenth Amendment.

10. The Harris County Sheriff's Office (HCSO), a department of the County whose official policies, customs, and practices, including the absence of any training and supervision on a citizen's right to use a firearm in self-defense, was the moving force in the violation of Gabriella's rights protected by the Constitution as supported by the factual allegations in this complaint.

11. HCSO official policies, customs and practices, including the absence any training and supervision on the specific issue of the need to be truthful in reporting on events that can result in a seizure under the Fourth Amendment, permitted and encouraged HCSO deputies, acting under the color of law, to abuse their law enforcement power and responsibilities to unconstitutionally use accusations and allegations not supported in fact or law, for other unlawful purposes like, as in this case, punishing an employee of an impound lot to send a message to its owner that the HCSO found the number of callouts for assistance bothersome.

12. HCSO deputy, Foreman, acting under color of law, had Gabriella handcuffed without a warrant, reasonable suspicion, or probable cause in violation of her Second and Fourth Amendment rights.

13. HSCO deputy Rogers, acting under color of law, had Gabriella arrested and charged with crime without probable cause and based on false reporting in violation of her Second and Fourth Amendment rights.

14. All charges against Gabriella were dismissed by the Court as not supported by probable cause.

## FACTUAL ALLEGATIONS

15.  December 10, 2022, Gabriella was detained, arrested, had her property searched and seized, and she was charged and jailed for the felony crime of assault with a deadly weapon by HCSO deputies acting under the color of law. All these actions lacked the constitutionally required warrant or reasonable suspicion or probable cause. All charges against her were dismissed for lack of probable cause.

16. On December 10, 2022, Gabriella worked for Mills Auto Storage, a County authorized impound lot.

17. Gabriella was responsible for, among many other duties, ensuring that people did not enter the fenced and gated proper without proper authorization.

18.  The impound lot stored motor vehicles many of which were sent to the lot by law enforcement, particularly by the HCSO.

19. The nature of Gabriella's job placed her at risk of injury from any person who trespassed into the lot. She was cabined in a small both right next to the entry gate. Valuable and important documents, equipment, and the keys to the stored vehicles were in that booth. A trespasser had immediate access to the booth and its contents and Gabriella if they pushed through the entry gate.

20.  On December 10, 2022, Gabriella was the only employee on site.

21. Gabriella duties as an employee included protecting the property stored within the fenced-in property of the impound lot.

22. Access to the lot was necessarily restricted as the primary purpose of the impound lot was protection of the vehicles within the lot and the contents within those vehicles.

23. NO TRESPASS signage was clearly displayed, because entry into the lot had to be monitored and restricted,

24. Gabriella had protocols she was required to follow to the letter before allowing anyone entry into the fenced in lot. Those protocols of course included requiring anyone who wanted to access the lot for vehicle to provide proof of ownership.

25. While working at the impound lot, Gabriella had experienced quite a number of serious threats of physical harm by trespassers and had been physically assaulted by trespassers.

26. As needed to protect herself and the impound lot property from people who posed a threat to her life and the property, Gabriella had previously called 911.

27. Through past encounters when her safety was threatened and she had called 911, Gabriella learned that HCSO response times were insufficient protection, and she lawfully owned and safely maintained and stored a firearm. Before December 10, 2022, she had not needed the protection of her firearm.

28. December 10, 2022, Gabriella received a phone call from a woman inquiring about how her son, who had just been released from jail, could reclaim his impounded vehicle from the lot. Gabriella explained the process and answered the woman's questions. The phone call was cordial.

29. Within minutes of that call, Gabriella received a call from the son of the women she had just spoken with. Unlike his mother, the son, whose name Gabriella now knows is Alvin Riggins, spoke with obvious rage and aggression, demanding his vehicle's immediate release from impound before he had even arrived at the lot.

30. Riggins abruptly hung up on Gabriella as she was explaining the process for reclaiming his vehicle.

31. Gabriella knew Riggins had just been released from jail for charges unknown to her, and his call was threatening. His phone call demands were delivered in content and tone that intimidated and demeaned and threatened her. Riggins speech was loud, pressured, and vulgar.

32. Within moments after Riggins hanging up on Gabriella, he arrived, and began slamming his hands on the grate of the window of her work booth while yelling curses at her.

33. The work booth was inside the fenced-in property. The grated window Mr. Riggins was slamming was intended to allow Gabriella to converse with customers without the customer entering the restricted property. Riggins, however, did not converse. He demanded and threatened and pounded at the grate and cursed.

34. Difficult and threatening as Riggins was, Gabriella tried her best to explain to him what was required before he, or anyone else, could have an impounded vehicle released or gain entry into the lot.

35. Gabriella's effort to get Riggins to provide the documentation required from all persons who sought a vehicle released from impound were met with an escalation in Riggins' angry, intimidating, threatening and abusive behavior and language.

36. Before Gabriella could release an impounded vehicle, the requestor was required to show proof of ownership. This could be done by providing written documentation or sending a email to the email address posted where Riggins or any other customer could see it.

37. Gabriella had explained the requirements to Riggins' mother on the phone earlier, and repeated the requirements to Riggins as his angry tirade continued.

38. Momentarily, Riggins appeared to relent a bit, and angrily took a photo shot of a paper, and emailed it to the address displayed at the booth window. He could have handed the document to Gabriella but choose not to do so.

39. When Gabriella looked at her computer, the emailed photo shot sent by Riggins was completely illegible—not surprising given the angry and agitated state he was in.

40. However, Gabriella feared that Riggins would lose even more self-control when she told him the email was illegible. Given his already violent behavior, Gabriella called 911, seeking assistance to prevent or assist in handling escalation.

41. After placing this 911 call, and fearing for her safety, Gabriella returned to the window and told Riggins that his email could not be read. As she feared, Riggins' lost all self-control.

42. Riggins screamed at her, "Maan fuck you," left the window, pushed entry gate open, trespassed, had headed toward the open door to her booth.

43. The assistance she requested from 911 did not arrive, and she was confronted with a violent man who was approaching her rapidly. He had already forced his way through the gate, was trespassing, and moving in her direction.

44. Gabriella exited the booth with her registered firearm, pointed it at Riggins, who moving toward her, and only steps away.

45. Gabriella told him to stop and leave.

46. Rather than leave, Riggins twice shouted, "Shoot me bitch."

47. Gabriella said, "Don't think I won't." Riggins glared at Gabriella with fury in his face and body language before finally turning away from her, and leaving the fenced-in property.

48. As soon Riggins turned to leave, Gabriella lowered her firearm, and called 911 a second time, asking for assistance. She remained on this second 911 call until the first HCSO deputy arrived. While on the call, she returned to her booth and unloaded her firearm as requested by HCSO Deputy on the 911.

49. HCSO did not dispatch a unit after Gabriella was required to defend herself and take care of the situation by herself. Her 911 call was assigned a "0" priority.

50. However, after Riggins left the fenced in area and Gabriella had secured the gate, Riggins placed a 911 call and at least 7 units responded.

51. When Gabriella placed her two calls, she was facing a imminent threat to her safety and the property she was responsible for.

52. When Riggins placed his 911 call, he faced no threat at all.

53. As no HCSO units responded timely to Gabriella's initial 911 call. She was left to defend herself and the impounded property. She did so effectively and reasonably, causing no harm to the trespasser who posed harm or anyone else.

54 The surge of 7 HCSO deputies, arrived after Gabriella had taken care of the situation.

55. Gabriella, not the threatening trespasser, was ordered handcuffed by Foreman, a K-9 deputy, who had done nothing to ascertain the facts before he issued the seizure order.

56. When Foreman ordered Gabriella handcuffed, she posed no threat of danger and certainly was not fleeing. She had unloaded her firearm, stored it, and was explaining the events to the first deputy to arrive at the scene. Foreman barged and for no constitutionally justified reason ordered the deputy Gabriella was calmly speaking with to cuff Gabriella.

57. When Foreman ordered Gabriella's seizure, he had not witnessed any of the events, he had no knowledge of the events, he had not conducted an investigation of the events, he had no warrant, he had no probable cause, nor any other constitutionally acceptable justification for handcuffing Gabriella.

58. Despite the HCSO deputies' disrespect or dismissal for Gabriella as a person and their misconduct directed at her, Gabriella cooperated with them, followed their commands, and treated them with the consideration they denied her.

59. Gabriella remained calm and polite toward the HCSO deputies even when shocked by Foreman's storming into the small booth where she worked and angrily ordered her handcuffed.

60. The only above-stated facts, however, reported in HCSO documentation of the December 10, 2022, event is that Gabriella pointed her weapon at Riggins.

61. The material omissions in the documentation and reporting that HCSO deputies and supervisor Deputy Rogers used to seek criminal charges against and prosecution of Gabriella was knowingly misleading.

62. HCSO reporting omissions include, but are not limited to, the following information:

    a. Nothing was reported about Riggins' behavior as described in this Complaint, other than that he may have entered the property without authorization;

    b. Specifically, none of Riggins' conduct that caused Gabriella to reasonably fear for her personal safety and life and the safety of the property her job required her to protect was reported;

    c. That Gabriella had made two calls to 911, seeking assistance, was not reported;

    d. That Gabriella remained on the second 911 call until the first HCSO deputy finally arrived was not reported;

    e. It was not reported that, while no formal dispatch of HSCO deputies was made in response to Gabriella's 911 calls, at least 7 deputies responded to a dispatch resulting from a 911 call Riggins made after he left the fenced-in property and Gabriella had returned to her booth and unloaded and stored her firearm as requested by HCSO during Gabriella second 911 call

f Just as Gabriella's 911 calls were not reported, it was not reported that Gabriella remained on her second 911 call anticipating that the assistance she needed would arrive:

g. It was not reported that, while Gabriella was beginning to discuss the events described in this Complaint with HCSO deputy Rosales who was the first HCSO deputy to arrive, Defendant Foreman barged in and ordered Gabriella handcuffed;

h. It was not reported that, after Gabriella was being transported to the Harris County Jail, Defendant Foreman helped Riggins open his impounded car, and joked with Riggins about the heavy smell of "weed" from Riggins car;

i. Riggins' failure and refusal to provide Gabriella with a legible proof of ownership before trespassing into the impound lot was not reported;

j. Riggins' knowing decision to enter the lot without necessary authorization is omitted;

k. Gabriella's fear for her safety and for the security of property within the impound lot by Riggins conduct was not reported;

l. That Gabriella was alone when Riggins trespassed and confronted her inside the fenced-in impound lot was not reported;

m. That Gabriella lowered her firearm immediately upon Riggins turning away from her to leave the restricted property was not reported;

n. That after Riggins left the fenced-in portion of the lot, Gabriella returned to her booth and waited for an HCSO deputy to arrive in response to her 911 call was not reported;

o. That Gabriella's description of what was said by Riggins and her when Riggins dared her to shoot him was not reported, but Riggins' inflammatory version was reported verbatim;

p. That Defendant Rogers, the supervising deputy at the scene made the startling comment that both Riggins and Gabriella were in the wrong, but she was more in the wrong, was not reported;

q. That a number of the HCSO deputies standing about at the scene complained that they received too many calls from the impound lot was not reported;

r. That Gabriella had been assaulted by a previous trespasser was not reported; and

s. That one HSCO deputy standing around at the scene said that a lead HSCO supervisor had recently groused in a team meeting about the need to do something about the number of call outs from the impound lot was not reported.

t. That Rosales did not take down any information from witnesses who saw Riggins trespass and appeared to have information beneficial to Gabriella was not reported.

u. That Rosales told Foreman that she did not identify him as the deputy who ordered Gabriella handcuffed was not reported.

v. That Foreman never activated his body camera was not reported.

63. HCSO reporting of the event accepted every word of Riggins description of the December 10, 2022, incident, and wholly omitted Gabriella Tellez' description.

64. HCSO deputies did not even ask Riggins about his behavior as described by Gabriella.

65. Nothing resembling an "investigation" occurred before Gabriella was, first, ordered handcuffed by Defendant Foreman who had no knowledge of the events that occurred prior to his arrival, and was then, upon the arrival of supervisor Defendant Rogers arrested, charged, and jailed.

66. Questions to Riggins about his behavior that a reasonably curious person, much less a professionally trained and supervised law enforcement officer, would have asked were not asked by any of the seven law enforcement officers present at the impound lot. And incredibly HCSO deputies sought no charges against Riggins who was an obvious trespasser.

67. Seven HCSO deputies were at the scene of Gabriella detention, arrest, property seizure, charging decision, or jailing. Not one of these many deputies had the constitutionally requisite warrant or reasonable suspicion or probable cause to support the actions taken against Gabriella by Defendants. Not one of these seven deputies questioned whether the actions taken against Gabriella were lawful or even made commonsense.

68. The HCSO deputies on the scene, however, did do a significant amount of grousing about the number and times they had been called out to the impound lot where Gabriella was an employee.

69. When talking among themselves at the scene where Gabriella was unlawfully arrested, Foreman admitted, where members of the public could hear, that at his assigned station, a senior

11

HCSO deputy spoke about the need for HSCO to do something about the number of call outs from the impound lot where Gabriella worked.

70. HSCO deputies at the scene of Gabriella's unconstitutional seizure stood around complaining to themselves and to citizen bystanders that they were irritated at having to respond to callouts from the impound lot.

71. Of course, Gabriella did not own the lot. She worked there.

72. Her job—like the many others who work at vehicle impound lots—was stressful and frequently dangerous.

73. Had she had the time to stand around complaining about her job and pay, as did most of the deputies at the scene of her seizure, Gabriella could have factually described the danger to her life that she encountered frequently at her work. She could factually add that Defendants' put out by having to do their job, arrested for protecting herself and the property inside the lot from a threatening trespasser, just released from jail, who the HCSO deputies not only took no action legal action against but treated like a BFF.

74. HCSO has no Constitutional authority to seize an employee of a business because it is irritated by the number of calls for assistance from that business.

75. Yet, 7 HCSO deputies participated in or permitted the rousting of Gabriella Tellez because they were miffed at the business she worked for.

76. Miffed, irritated, put out are not synonyms for warrant, reasonable suspicion, or probable cause.

77. A law enforcement officer's irritation at a business entity can never, as a matter of fact and law, justify the use of incomplete and false reporting as a pretext to teach a lesson to a business

entity by seizing and charging a hard-working employee of that business with a felony. However, that is exactly what Defendants did to Gabriella Tellez.

78. Factually, 7 HCSO deputies participated in or stood in silence as Gabriella was seized and charged with a felony for doing her job and exercising her right and obligation to protect her own safety and the security of the property within the impound lot from an enraged and physically threatening trespasser.

79. The fact of 7 HCSO deputies violating the well-established constitutional right of a citizen to defend herself and the property she was responsible for from an enraged trespasser reflects NO training and supervision of HCSO deputies about a citizen's established right to protect herself from such threats. Under NO imaginable training and supervision program for a law enforcement officer is it taught that an officer of the law should give a violent trespasser, who had just been released from jail, a free pass while throwing the proverbial book at woman trying to do her job.

80. That HCSO deputies feel put out by calls for assistance from a particular business location is not and never has been and must never be sufficient to support a citizen's right to be free from seizure by the state.

81. When law enforcement could have helped, Gabriella called 911 for assistance in handling Riggins who angrily slammed on the grating of her office window cursing at her. He posed an imminent to her and the property she was employed to protect. HSCO deputies did not help. Instead, Defendants found Gabriella's call irritating.

82. It was not particularly pleasing for Gabriella to work at a vehicle impound lot that by the nature of its business often placed her safety at risk. She did not have the luxury of being put out and spending her time grousing about her job conditions.

13

83. Without probable cause or the semblance of a fair investigation or even the slightest evidence that any of the seven law enforcement officers cared what Gabriella had to say or what had happened to her, Gabriella jailed on felony charges. Charges that were dismissed for lack of probable cause.

84. All charges against Ms. Tellez were dismissed for lack of probable cause.

85. Defendants violation of Gabriella's Constitutional rights caused he injury, including, but not limited to, the loss of her freedom, severe emotional distress, attorney's fees, bail fees, and loss of income.

## CAUSES OF ACTION

### CLAIM I
### VIOLATION OF THE FOURTH AMENDMENT BY FOREMAN AND ROGERS

86. Gabriella Tellez incorporates all factual allegations made in this Complaint.

87. The Fourth Amendment, as incorporated by the Fourteenth Amendment, guarantees everyone the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U. S. CONST. AMEND. IV and U. S. CONST. AMEND. XIV. Such violations are actionable pursuant to 42 U.S.C. Sections 1983 and 1988. Unreasonable seizures include detention or arrest without warrant or probable cause.

88. The detention, arrest, seizure of her firearm, felony charging, and jailing of Gabriella Tellez all lacked Constitutional justification, and, therefore, violated Plaintiff's well established Fourth Amendment rights. Any reasonable law enforcement officer would have known this. Foreman, acting under the color of law, violated Gabriella's Fourth Amendment rights when he ordered her handcuffed. Rogers, acting under the color of law, violated Gabriella's Fourth Amendment rights by all his actions and inactions as factually alleged in this Complaint. This

14

includes, but is not limited to, his arrest of Gabriella without warrant or probable cause and his materially false reporting for the purpose of having her charged with a felony. Five other HCSO deputies witnessed or knew about these events and did nothing to question or prevent the violation of Gabriella's Constitutional rights.

89. Foreman's and Roger's unconstitutional misconduct as described in this Complaint caused injury to Gabriella Tellez.

90. The defense of qualified immunity under the circumstances described in this Complaint is not available for Defendant's Foreman and Rogers.

## CLAIM II.
## VIOLATION OF THE SECOND AMENDMENT

91. Gabriella Tellez incorporates all factual allegations made in this Complaint.

92. The Second Amendment, as incorporated by the Fourteenth Amendment, guarantees that "the right of the people to keep and bear arms shall not be infringed." U. S. CONST. AMEND. II and U. S. CONST. AMEND. XIV. Such violations are actionable pursuant to 42 U.S.C. Sections 1983 and 1988.

93. Rogers, acting under the color of law, violated Gabriella's Second Amendment rights by ordering the confiscation of her firearm, arresting her, and seeking felony charges against through false reporting. Gabriella had a Constitutional right to own her firearm and reasonably use it, as she did, for her own self-defense and the protection of the property she was responsible for as an employee of an impound lot. Gabriella was confronted by a trespasser who posed a threat her personal safety and the property she was paid to protect. Arresting her, seeking felony charges against her, and confiscating her firearm violated well established law. Any reasonable law enforcement officer would have known this. Five other HCSO deputies witnessed or knew about

15

these events and did nothing to question or prevent the violation of Gabriella's Constitutional rights.

94. Roger's unconstitutional misconduct as described in this Complaint caused injury to Gabriella Tellez.

95. The defense of qualified immunity under the circumstances described in this Complaint is not available for Defendant Rogers.

## CLAIM III.
## MUNICIPAL LIABILTY

96. Gabriella Tellez incorporates all factual allegations made in this Complaint.

97. As supported by the facts alleged in this Complaint, Harris County provided no training or supervision of HCSO deputies on an individual's right to own and properly use a firearm in self defense or defense of property. Any training and supervision on these issues would have prevented the violation of Gabriella's well-established Constitutional rights as factually described in this Complaint. The absence of any training and supervision by the County on these issues is demonstrated not only by the unconstitutional conduct of Foreman and Rogers, but by the failure of any of other 5 HCSO deputies present to question or prevent Foreman's and Rogers' violation of well-established law.

98. Instead of respecting well established law, all HCSO deputies present by conduct and words abused the law by permitting their irritation at the number of call outs to a high-risk business location to unlawfully scapegoat a hard-working citizen just to teach the business a lesson not to bother them so much. This exercise in law enforcement lawlessness could never occur, particularly with so many deputies present, if the County provided any training or supervision about the right of an individual to reasonably bear and use firearms. Moreover, Foreman's petty and misinformed

16

"lecture" to the business owner about Gabriella's supposed misconduct demonstrates a total lack training and supervision about basic gun rights.

99. The County's failure to provide any training and supervision about a citizen's gun rights was the moving force in the violation of Gabriella's constitutional rights, and cause her injury.

## JURY DEMAND

100. Plaintiff demands her right to a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Gabriella Tellez Requests that the court:

 A. Enter judgment for Gabriella Tellez and against the Foreman and Rogers individually and Harris County, Texas, for compensatory damages.

 B. Gabriella Tellez suffered anxiety, fear, anger, and depression because of the acts of the individually named defendants and Harris County, and therefore, seeks damages for mental anguish past and future as well as the pain and suffering come up past and future, and other damages set forth below.

 C. Defendants' misconduct caused them to be liable for punitive damages as they were consciously indifferent to the plaintiff's constitutional rights and they did the acts knowingly, such acts being extreme and outrageous and shocking to the conscious.

 D. Gabriella Tellez is entitled to recover attorney's fees and costs to enforce her Constitutional rights under U.S.C. Sections 1983 and 1988.

 E. Award damages to Gabriella Tellez for the violations of her Constitutional rights.

 F Grant such other and further relief as appears reasonable and just to which Gabriella Tellez shows herself entitled.

Respectfully submitted,

**JACK E. URQUHART**
**ATTORNEY AT LAW**

_____
State Bar No. 20415600
1302 Waugh Drive, No. 880
Houston, Texas 77019
 832-723-2201
 jack.urquhart47@gmail.com

ATTORNEY FOR PLAINTIFF